1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HUY-YING CHEN,<br><br>                     Plaintiff,<br><br>     v.<br><br>KING COUNTY SHERIFF'S OFFICE et al.,<br><br>                Defendants. | CASE NO. 2:21-cv-01492-LK<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendants' Motion for Summary Judgment, Dkt. No. 22, and on Plaintiff Huy-Ying Chen's tardy cross-motion for summary judgment, Dkt. No. 30. Mr. Chen, who is proceeding pro se, filed this action under 42 U.S.C. § 1983 against the King County Sheriff's Office ("KCSO") and Sheriff's Deputy Hugo Esparza, alleging that they violated his Fourteenth Amendment rights and caused him emotional distress by preparing, filing, and recording a void sheriff's deed that deprived him of his home. *See* Dkt. No. 1 at 11–12. For the reasons set forth below, the Court grants Defendants' motion, denies Mr. Chen's motion, and dismisses this action.

1

## I.   BACKGROUND

2

**A.   The Long History of This Dispute**

3   This case is just the latest chapter in Mr. Chen's ongoing lawsuits. Although this dispute

4   may not have reached "Bleak House" proportions just yet,[1] it has a 15-year history involving

5   multiple forums.

6   In 1999, Mr. Chen and his now-deceased wife borrowed $525,000 from Washington

7   Mutual Bank to purchase a home in King County, Washington. Dkt. No. 24-7 at 4.[2] Washington

8   Mutual later assigned the loan to JP Morgan Chase Bank. Dkt. No. 24-7 at 4.[3]

9   The Chens failed to make a substantial portion of the monthly payments due on the loan.

10   *Id*. In 2006, Chase initiated a judicial foreclosure action. *Id.* This action spurred over a decade of

11   litigation by Mr. Chen.

12   In March 2007, Mr. Chen filed for bankruptcy, and on April 13, 2007, he removed Chase's

13   judicial foreclosure action to bankruptcy court. *In re Chen*, No. 07-01115-PHB, Dkt. No. 1 (Bankr.

14   W.D. Wash.). Finding that "there is no genuine issue of material fact concerning [the Chens']

15   failure to make the required monthly payments" on the mortgage "and that [the Chens] are in

16   default under the Note and under the terms of the Deed of Trust securing repayment of the Note,"

17   the bankruptcy court in October 2008 determined that Chase was "entitled to have the real property

18   . . . sold at a foreclosure sale." *Id.*, Dkt. No. 32 at 2. It accordingly granted summary judgment

19   under Federal Rule of Civil Procedure 56(a) to Chase, *id.* at 3, awarded a judgment of $647,476.68

20

21   [1] C. Dickens, *Bleak House* 38 (E. Johnson ed. 1965) (London 1853) ("Jarndyce and Jarndyce drones on. . . . Scores of persons have deliriously found themselves made parties in [the lawsuit], without knowing how or why.").

22   [2] Some of the filings refer to the property as located in Sammamish, while others place it in Redmond, despite the same street address. *See, e.g.*, Dkt. No. 1 at 4; Dkt. No. 23-5 at 10. The difference is immaterial for purposes of this motion.

23   [3] Pursuant to Federal Rule of Evidence 201, the Court may "take judicial notice of matters of public record," *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011) (cleaned up), including court filings and other matters

24   of public record, *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006)

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 2

in favor of Chase, and ordered a foreclosure sale of the property. *Id.*, Dkt. No. 32 (order granting summary judgment dated October 18, 2007), Dkt. No. 47 (Judgment and Decree of Foreclosure dated November 29, 2007). Although Mr. Chen now asserts that "the Bankruptcy court erroneously granted JPMorgan's motion for summary judgment," Dkt. No. 1 at 5, the Chens did not pursue their appeal of that order to final judgment. *See Chen v. Chicago Title Fin. Co.*, No. 07-1972-RSM (W.D. Wash.). And notably, this Court denied the Chens' request for a stay of the foreclosure pending their appeal, finding that "the foreclosure sale of their Redmond home is unavoidable" because the Chens were "unlikely to prevail on appeal against Chase," and "even if the[y] were to prevail . . . other creditors would still foreclose on their home because the amount of the Chens' debt drastically outweighs the value of their single asset, the Redmond home." *Id.*, Dkt. No. 15 at 4–5.

Chase registered the bankruptcy court judgment in King County Superior Court as a foreign judgment and obtained an order of sale. Dkt. No. 24-7 at 4, 7; *see also JPMorgan Chase Bank v. Chen*, No. 08-2-13281-1-SEA (King Cnty. Sup. Ct.) (the "2008 Action"). However, the parties reached an agreement to cancel the pending sale in exchange for the Chens dismissing the appeal of the bankruptcy court judgment. Dkt. No. 24-7 at 4–5; *see also In re Chen*, Dkt. Nos. 120, 124.

It appears that "efforts to negotiate a payment plan over the next several years were unsuccessful[.]" Dkt. No. 24-7 at 5. In 2011, Mr. Chen filed another suit against Chase in King County Superior Court. Dkt. No. 24-3 at 2. The Court granted defendants' motion to dismiss and dismissed the lawsuit with prejudice in February 2012. *Id.* at 3.

Chase obtained another order of sale in September 2016, scheduling the date of sale for December 16, 2016. Dkt. No. 24-7 at 5; 2008 Action, Dkt. No. 79 at 15. On December 12, 2016, Mr. Chen filed a "Motion to Dismiss a Wrongful Judicial Foreclosure" in the 2008 Action. Dkt. No. 24-7 at 5. The superior court denied Mr. Chen's motion, permitting the sale to proceed as

scheduled. *Id.* The sale occurred on December 16, 2016, and the following month Mr. Chen filed an objection to confirmation of the sale. *Id.* The trial court overruled his objections and denied his subsequent motion for reconsideration. *Id.*

Mr. Chen appealed, and the Washington court of appeals affirmed. Dkt. No. 24-7. It rejected Mr. Chen's claims that there had been irregularities with the sale, including his claims that he did not receive notice of the sale, that the judgment was unenforceable because it expired before the foreclosure date, and that the judgment was void because it was filed in the trial court while his bankruptcy case was stayed. *Id.* at 5–8.

Undeterred, Mr. Chen filed another lawsuit against Chase, its Vice President, and various attorneys in August 2018, this time in federal district court. *Huy-Ying Chen v. JPMorgan Chase Bank*, No. 2:18-CV-1269-RSL, Dkt. No. 1 (W.D. Wash. Aug. 27, 2018). He asserted causes of action for "lack of standing to foreclose," fraud, intentional infliction of emotional distress, quiet title, slander of title, and declaratory relief. *Id*. In April 2019, the Court granted the defendants' motion to dismiss, holding that the Chens "fail[ed] to raise a federal question in their complaint" and failed to show that they had "complete diversity with all defendants." *Huy-Ying Chen v. JPMorgan Chase Bank*, No. 2:18-CV-1269-RSL, 2019 WL 1651688, at *3 (W.D. Wash. Apr. 17, 2019). The Court also denied Chen's motion for reconsideration. 2019 WL 2248048 (W.D. Wash. May 24, 2019).

Mr. Chen then returned to state court, filing a "Motion to Set Aside Sheriff Sale and Vacate Sheriff's Certificate of Purchaser under CR (60) Due to Plaintiff Counsel Defective Foreclosure & Fraudulent in its Concoction by Misrepresented Affidavit Vacate Sheriff's Certificate of Purchaser" on June 17, 2019 in the 2008 Action. 2008 Action, Dkt. No. 79. Mr. Chen supported his motion with "newly discovered evidence": a "BP Investigation Report" from July 25, 2017.

1   *See Id.*, Dkt. No. 86 at 3, 7–13.[4] The court denied Mr. Chen's motion and issued an order granting

2   The Bank of New York Trust Company's[5] motion to confirm the sheriff's sale. 2008 Action, Dkt.

3   Nos. 71, 89.

4       In June 2019, Mr. Chen filed another lawsuit in King County Superior Court against

5   JPMorgan Chase, its Vice President, and Mortgage Asset-Backed Pass-Through Certificates Series

6   2005-RP3. Dkt. No. 24-10. That case was dismissed with prejudice for failure to state a claim on

7   September 30, 2019. Dkt. No. 24-11 at 3.

8       Mr. Chen then refiled essentially the same lawsuit in the same court in October 2021. Dkt.

9   No. 24-12; *see also Chen v. JP Morgan Chase Bank*, No. 21-2-14448-5-SEA (King Cnty. Sup.

10  Ct.). He again removed the case to bankruptcy court in April 2022, where the court granted The

11  Bank of New York Trust Company's motion to remand and denied Chen's motion for

12  reconsideration. *In Re Chen*, No. 22-10615-CMA, Dkt. Nos. 1, 29, 34 (Bankr. W.D. Wash.). In its

13  order denying the motion for reconsideration, the bankruptcy court noted that Mr. Chen raised

14  "arguments that [he] has already made several times in this case and in the now-dismissed

15  underlying bankruptcy proceeding." *Id.*, Dkt. No. 34 at 2. And in August 2022, the court barred

16  Mr. Chen from filing any bankruptcy case for two years, reasoning that:

17          Despite the existence of lawsuits that Mr. Chen has filed against other entities, all
18          of them are premised upon the false claim that he makes that he was wrongfully
            deprived of his property. The orders have been entered by multiple courts and
19          affirmed by courts of appeal and the Washington Supreme Court has denied cert on
            all of these issues that Mr. Chen continues to raise year after year after year. So that
20          ship has sailed. . . .

21          This [is] a bad faith filing. . . . [Mr. Chen] clearly filed this case intending to defeat
            the eviction action pending by the current owner of the property, though he has not
22          explained why he removed that action here, which is what he did. But clearly that
            was the only point of this bankruptcy, again, punctuated by his oral argument this

23  ─────────────
    [4] Mr. Chen filed a September 2019 declaration from Bill Paatalo containing largely the same conclusions as the July
    2017 report. *Compare id.*, *with* Dkt. No. 1-3 in this matter.

24  [5] The Bank of New York Trust Company is listed as the successor to Chase in the 2008 Action.

morning that is merely attacking the owner and everything about his loss of the property. . . .

The debtor's behavior in this case has been egregious: he has filed a number of pleadings attacking [The Bank of New York Trust Company], its counsel, and asserting that somehow he can unwind the judicial foreclosure when the state court has rejected this argument multiple times.

The fact that the debtor only filed this case to benefit from the automatic stay and seek a new venue for his frivolous claims is demonstrated by two facts. One, his response to this motion in which he was directed to explain why this case was not filed in bad faith, but instead he just continues to attack [The Bank of New York Trust Company] and claim that orders entered by prior courts are wrong. And this court has already told Mr. Chen multiple times that this court cannot challenge orders entered by another court. And rather than addressing his own behavior, that is the . . . tack he takes. And second, more importantly, the debtor was required to file an amended plan by July 11, *see* ECF No. 39, and to date, over a month later, he has failed to do so. The debtor was made aware of this at a prior hearing, but he has not taken any action to file a plan despite filing a number of pleadings directed at Bank of New York in the meantime.

*Id.*, Dkt. No. 80 (Aug. 19, 2022); *see also id.*, Dkt. No. 81.[6] Mr. Chen appealed that order and has not taken any action to pursue the appeal. *See In Re Chen*, No. 22-cv-01231-RSM (W.D. Wash.).

In September 2022, following remand, the superior court dismissed Mr. Chen's complaint in its entirety under the doctrine of *res judicata* and for failure to state a claim. Dkt. No. 24-13 at 7–9. The Court also declared Mr. Chen to be a "vexatious litigant." *Id.* at 8; Dkt. No. 24-14 at 4.

**B.     Defendants' Role in the Foreclosure Sale**

KCSO and Esparza had a ministerial role in the foreclosure. On October 20, 2016, KCSO received an Order of Sale from King County Superior Court in the 2008 Matter directing the Sheriff to levy upon and sell the property. Dkt. No. 23-5 at 17–19. The order "commanded" KCSO to sell "all of the interest" that Mr. Chen had in the property when he purchased it in 1999. *Id.* at 18. Mr. Chen filed a motion to dismiss the "wrongful judicial foreclosure," and the court denied

---

[6] In this proceeding, The Bank of New York Trust Company alleged that Chen and his family members are unlawfully residing at the property, and that Mr. Chen filed the bankruptcy to stop the King County Sheriff from ejecting Mr. Chen and his family from the property. *See id.*, Dkt. No. 34 at 1–2.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 6

the motion. Dkt. No. 24-4 at 1; Dkt. No. 24-5 at 2.

After receiving the October 20, 2016 order, Deputy Esparza signed a Sheriff's Levy on Real Property under Execution or Order of Sale, certifying that he had received the order of sale. Dkt. No. 23-5 at 13. "[B]y virtue of that . . . order," he levied upon and took possession of the property. *Id*. (capitalization removed). Deputy Esparza also signed a Sheriff's Notice to Judgment Debtor of Sale of Real Property, notifying Mr. Chen that the property would be sold on December 16, 2016. *Id.* at 10. The KCSO Civil Process Unit is responsible for the service and enforcement of civil court orders, and its Unit Supervisor attests that KSCO received Chase's certification that it had served the Sheriff's Notice to Judgment Debtor and Public Notice of Sale of Real Property and Exemption Statutes on Chen. Dkt. No. 23 at 2, 4. She also avers that "Sale Notices were posted in three public places, including at the property subject to sale." *Id.* at 4.

After the December 16, 2016 foreclosure sale, the KCSO Civil Process Unit prepared the Sheriff's Return on Sale of Real Property and the Sheriff's Certificate of Purchase of Real Estate, which was signed by Deputy Esparza, and delivered original documents to the clerk of the court. *Id.* at 5. The Court ordered an eight-month redemption period following the sale as set forth in Section 6.23.020 of the Washington Revised Code, which provides debtors the opportunity to keep their property by paying back the purchaser through the sheriff's office the amount of their bid, plus other allowable costs and interest. *Id.* The KCSO Civil Process Unit did not receive a notice of intent to redeem from Mr. Chen during the redemption period. *Id.*

In February 2018, the Court issued an order confirming the sheriff's sale nunc pro tunc to February 10, 2017. *See* 2008 Action, Dkt. No. 71 at 1. On June 21, 2019, after the redemption period had expired, the KCSO Civil Process Unit received a request from JPMorgan Chase for a Sheriff's Deed to Real Property. Dkt. No. 23 at 5. Deputy Esparza signed the Sheriff's Deed on June 24, 2019. *Id.*; Dkt. No. 23-8 at 2–3 (describing the sale and its confirmation by the Court;

1   stating that the Sheriff does "hereby grant, bargain, sell, convey and confirm" JPMorgan Chase

2   and its affiliates "as the purchaser at said sale . . . and assigns forever" the property "by virtue of

3   the procedure indicated above, the orders of said Court, and the statutes of this State.").

4   **C.   The Current Lawsuit and Claims**

5         Mr. Chen filed this lawsuit in this Court on November 3, 2021. Dkt. No. 1. He claims that

6   Defendants violated 42 U.S.C. § 1983 by "preparing, filing, and recording a void Sheriff's Deed

7   to Real Property, [and] depriv[ing] Chen of his right to be protected in his interest in the subject

8   property[.]" *Id.* at 11–12. He also claims that Defendants deprived him of his property without due

9   process in violation of the Fourteenth Amendment, *id.* at 12, and intentionally inflicted emotional

10   distress, *id.* at 13–14. For all three claims, Mr. Chen seeks damages "in excess of $75,000" and

11   "such further and other relief as the Court deems just and proper." *Id.* at 12–14.

12         As in prior lawsuits, Mr. Chen tried to remove this matter to bankruptcy court. Dkt. No.

13   15. The Court denied his motion. Dkt. No. 19.

14   **II.   DISCUSSION**

15   **A.   Jurisdiction**

16         This Court has jurisdiction under 28 U.S.C. § 1331 because Mr. Chen has asserted claims

17   under 42 U.S.C. § 1983 for alleged violations of the Fourteenth Amendment. The Court has

18   discretion to exercise supplemental jurisdiction over Chen's state law claim for outrage under 28

19   U.S.C. § 1367.

20   **B.   Summary Judgment Standard**

21         Summary judgment is appropriate only when "the movant shows that there is no genuine

22   dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

23   Civ. P. 56(a). The Court does not make credibility determinations or weigh the evidence at this

24   stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The sole inquiry is "whether the

1  evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-

2  sided that one party must prevail as a matter of law." *Id.* at 251–52. And to the extent that the Court

3  resolves factual issues in favor of the nonmoving party, this is true "only in the sense that, where

4  the facts specifically averred by that party contradict facts specifically averred by the movant, the

5  motion must be denied." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

6      The Court will, however, enter summary judgment "against a party who fails to make a

7  showing sufficient to establish the existence of an element essential to that party's case, and on

8  which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

9  (1986). Once the moving party has carried its burden under Rule 56(c), "the nonmoving party must

10 come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec.*

11 *Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e))

12 (emphasis omitted). Metaphysical doubt is insufficient, *id.* at 586, as are conclusory, non-specific

13 allegations, *Lujan*, 497 U.S. at 888–89.

14 **C.    Defendants Are Entitled to Summary Judgment**

15     This lawsuit is Chen's attempt to have yet another bite at an apple that turned rotten long

16 ago. Throughout Chen's numerous court proceedings, he has argued that the foreclosure sale was

17 void for various reasons, including the theory that the various banks were not legal entities or

18 otherwise did not have the right to seek foreclosure. He has advanced these arguments repeatedly

19 despite numerous courts rejecting them. Even now, he contends that his "[p]ayments on the

20 mortgage were consistently made on time as agreed," Dkt. No. 1 at 4, though this assertion is flatly

21 contradicted by the records in other cases. *See, e.g.*, Dkt. No. 24-7 at 4 ("In the bankruptcy

22 proceedings, Chen admitted the loan was in default.").

23     Defendants argue that Chen's claims must be dismissed because they are "entitled to quasi-

24 judicial immunity when operating as an arm of the court by executing a Superior Court's Order

directing it to conduct the sale of real property as part of judicial foreclosure proceedings according to the strict terms of the court's order[.]" Dkt. No. 22 at 7. They also argue that they are entitled to dismissal because Mr. Chen has failed to (1) "allege any facts that Defendants have violated his constitutional rights" and (2) state a *Monell* claim against the KCSO or Deputy Garza in his official capacity. *Id.* at 7, 12–14; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

Mr. Chen responds that Defendants are liable for several reasons. First, under Section 6.17.020 of the Revised Code of Washington, the judgment could only be enforced for 10 years after the bankruptcy court's November 29, 2007 judgment, but Defendants issued the Sheriff's deed in August 2019. Dkt. No. 27 at 3. Second, he argues that Defendants engaged in "misconduct" because the trial court did not confirm the sale, so the sheriff's deed is therefore void. *Id.* Third, he claims that the sheriff's sale of the property "should have been set aside" because "JPMorgan Trustee" and "Mellon Trustee" did not send proper notice of redemption to him. *Id.* at 5. Fourth, Mr. Chen argues that the sale occurred on September 30, 2016, and the "sale was held and the execution was returned outside the authorized statutory period," rendering the sale void. *Id.* Fifth, he claims that there was a "fatally defective chain of title" for the property, so the sheriff's deed was issued without due process. *Id.* at 6. Mr. Chen has already advanced these theories—without success. *Compare, e.g.* Dkt. No. 1 at 6–8, 10, *with* Dkt. No. 24-12 at 6–9; *see* Dkt. No. 24-13.

The Court finds that Defendants are entitled to summary judgment because Chen's claims are barred by issue preclusion, quasi-judicial immunity, and his failure to state an outrage claim.

    1.   <u>Issue Preclusion Bars Chen's Claims</u>

The Constitution provides that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." U.S. Const. art. IV, § 1. And under 28 U.S.C. § 1738, a federal court "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was

rendered." *Migra v. Warren City Sch. Dist. Bd. of Ed.,* 465 U.S. 75, 81 (1984). "By 'preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate,'" the related doctrines of claim and issue preclusion "protect against 'the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (alterations in original) (quoting *Montana v. United States*, 440 U.S. 147, 153–154 (1979)).

"[C]laim preclusion" is the doctrine providing that "a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *Id.* (quoting *New Hampshire v. Maine,* 532 U.S. 742, 748 (2001)) (internal quotation marks omitted). "Issue preclusion, in contrast, bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Id.* (internal quotations marks omitted) (quoting *New Hampshire,* 532 U.S. at 748–49). Issue preclusion is the relevant doctrine here.

In determining the preclusive effect of a state court judgment, federal courts follow the state's rules of preclusion. *Kremer v. Chem. Const. Corp.,* 456 U.S. 461, 482 (1982). In Washington, issue preclusion (also known as collateral estoppel) "bars relitigation of an issue in a later proceeding involving the same parties." *Schibel v. Eymann*, 399 P.3d 1129, 1132 (Wash. 2017). Issue preclusion "promotes judicial economy and prevents inconvenience or harassment of parties," providing "finality in adjudications" and "shielding parties and courts from expending resources in repetitive litigation." *Id.* It may bar a plaintiff from asserting a claim that he previously litigated and lost against a different defendant. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 328 (1979). For issue preclusion to apply, (1) the issue in the earlier proceeding must be identical to the issue in the later proceeding, (2) the earlier proceeding must have ended with a final judgment

on the merits, (3) the party against whom collateral estoppel is applied must have been a party, or in privity with a party, to the earlier proceeding, and (4) applying collateral estoppel must not be an injustice. *Schibel*, 399 P.3d at 1132.

Mr. Chen is no stranger to *res judicata.* He has confronted it in numerous proceedings where courts have held that it bars his claims. *See, e.g.*, Dkt. No. 1-1 at 38 (trial court in the 2008 Action noting in February 2017 that "[a] lot of the issues that have been raised or objections that have been raised . . . were already litigated or could have been and should have been litigated in the prior 2011 lawsuit, which was dismissed with prejudice, and from what I can tell, no appeal was filed"); Dkt. No. 24-13 at 7–8 (September 2022 state court order finding that Chen's claims were barred by *res judicata* and concluding that Mr. Chen is a vexatious litigant). These cases have involved identical issues and have ended with a final judgment on the merits. *See, e.g.* Dkt. No. 1-1 at 37–38 (finding that "there is evidence in the record that Mr. Chen did in fact receive notice of the sale" and confirming the sheriff's sale because Mr. Chen failed to "establish substantial irregularities in the sheriff's sale under RCW 6.21.110"); Dkt. No. 24-7 (October 8, 2018 court of appeals' decision rejecting Mr. Chen's contentions that Chase was not a valid entity, that he did not receive notice of the sale, that Chase filed an untimely affidavit, that the judgment was unenforceable because it expired prior to the foreclosure sale, and that the judgment was void because it was filed in trial court while his bankruptcy case was stayed); Dkt. No. 24-13 at 7–8 (superior court September 2022 dismissal with prejudice of Mr. Chen's claims for violation of his civil rights, violation of the Consumer Protection Act, outrage, slander of title, fraudulent misrepresentation, and fraudulent transfer—premised on alleged illegality of the foreclosure, sale, and sheriff's deed—because his allegations either failed to state a claim upon which relief could be granted or were barred by res judicata).

An issue is "identical to the issue in the later proceeding" when it was "actually litigated

and necessarily decided in the first proceeding." *Sprague v. Spokane Valley Fire Dep't*, 409 P.3d

160, 183 (Wash. 2018). Here, all of Mr. Chen's causes of actions are predicated on his assertion

that the foreclosure and sale of his property was unlawful, and that the 2019 deed was defective.

As discussed above, Mr. Chen has already litigated these issues and lost. The nearly identical

issues at play are particularly clear when comparing the salient allegations in the complaint in this

case with Chen's most recent complaint in state court:

| This case | State court |
| --- | --- |
| Dkt. No. 1 at 6–11: | Dkt. 24-12 at 6–14: |
| 18. The subject property was wrongfully sold at foreclosure sale on December 16, 2016. | 2.11. The subject property was wrongfully sold at foreclosure sale on December 16, 2016. |
| 19. On February 10, 2017, Chen filed an Objection to the confirmation of sale. Chief Civil Judge ("Chief Judge-Beth") denied/overruled Chen's Objection. Chief Judge-Beth emphasized her ruling was not on a hearing of certificate of confirmation sale. As such, she required JPMorgan-Chase to file a separate motion and notice of hearing to confirm the sale. (See Attachment A-hearing transcript). Chase or JPMorgan-Chase never set up a hearing to confirm the sale. | 2.12. On February 10, 2017, Chen filed an Objection for confirmation of sale, Chief Civil Judge ("Chief Judge-Beth") denied Chen's Objection for confirmation of sale. Chief Judge-Beth emphasized her ruling was not on a hearing of certificate of confirmation sale, she required JPMorgan to separately file a motion and notice of hearing to confirm the sale. (See attached A-hearing transcript). Chase or JPMorgan-Chase never set up a hearing to confirm the sale. |
| 20. On February 14, 2018, the Superior Court Ex Parte Department issued an alleged order confirming the sheriffs sale nunc pro tune to February 10, 2017. Chen has disputed the validity and meaning of this order because confirmation of sale never occurred how "nunc pro tunc" can applied. | 2.13. On February 14, 2018, the Superior Court Ex Parte Department issued an alleged order confirming the sheriff's sale nunc pro tunc to February 10, 2017. Chen has disputed the validity and meaning of this order because confirmation of sale never occurred how "nunc pro tunc" can applied. |
| 21. On August 1, 2019, the KSCO delivered "RECEIPT(S) OF 4 CERTIFICATE OF PURCHASE" to an unknown purchaser without s confirmation of the sale that strictly violated RCW 6.21.ll0(e). . . . | 2.14. On August 1, 2019, the King County Sheriff office delivered "RECEIPT(S) OF CERTIFICATE OF PURCHASE" to unknown Purchaser without confirmation of the sale that strictly violated RCW 6.21.110(e). . . . |
| 24. The Sheriffs Deed be issued by Defendants without certificate of confirmation sale and without certificate of redemption violated RCW 6.21.110, RCW 6.23.020 and RCW 4.56.190. | 2.16. The Sheriff's Deed be issued by Sheriff Office without certificate of confirmation sale and without certificate of redemption violated RCW 6.21.110, RCW 6.23.020 and RCW 4.56.190. |
| 25. The Sheriffs Deed to Real Property was also issued after the 10- year limitations period. Thus, the alleged transfer of ownership to BONY Trust is void as a matter of law. BONY Trust is not the legal owner of the subject property and its asserted interest in the subject property is wrongful and has caused Chen damages: economic, emotional, and otherwise. . . . | 2.17. The Sheriff's Deed to Real Property was also issued after the 10-year limitations period. Thus, the alleged transfer of ownership to BONY Trust is void as a matter of law. BONY Trust is not the legal owner of the subject property and its asserted interest in the subject property is wrongful and has caused Chen damages: economic, emotional, and otherwise. |

| | |
|---|---|
| 27. Any purported assignments of mortgage are void as a matter of law. . . . | 2.19. Any purported assignments of mortgage to Defendants are void as a matter of law. . . . |
| 29. BP Investigative Agency found significant deficiencies in the title documents. . . . | 2.21. BP Investigative Agency found significant deficiencies in the title documents submitted by Defendants. . . . |
| 32. Defendants knew, or should have known, that the foreclosing entities had no legal standing as fictional entities to initiate a judicial foreclosure action. . . . | 2.24. Defendants knew, or should have known, that there was no legal standing as fictional entities to initiate a judicial foreclosure action. . . . |
| 35. Defendants knew, or should have known, that the foreclosing entities never proved that they were a "holder" of the underlying note which secures the mortgage and title to the subject property. | 2.27. Defendants have never proven that they are a "holder" of the underlying note which secures the mortgage and title to the subject property. |
| 36. The Sheriffs Deed issued on August 7, 2019 is void as a matter of law since the underlying foreclosure was wrongful and illegal. | 2.28. The Sheriff's Deed issued on August 7, 2019 is void as a matter of law since the underlying foreclosure was wrongful and illegal. Defendants failed to prove its standing to foreclose. Defendants failed to proffer sufficient evidence that the documents relied upon were legal and binding. In fact, as described more fully herein, the relied upon documents were fraudulent on their face, and thus void as a matter of law. . . . |
| | 3.3. Defendants knew, or should have known, that the judgment lien they relied upon to foreclose the subject property, was expired, and therefore had no effect. |
| 37. . . . . With clear and evidence in hand that the title to the subject property was defective and disputes surrounding the subject property were pending in Court, Defendants moved forward in preparing, filing, and having recorded a void Sheriffs Deed to Real Property. . . . | 3.4. Sheriff Office issued a Sheriff deed without certificate of confirmation sale, without certificate of redemption also without considerate the foreign judgement had been ceased for its statutory life. . . . |
| 41. Defendants knew, or should have known, that there was no evidence to indicate that the underlying judicial foreclosure had been conducted within the confines of Washington law. | 8.2. At the time that the Defendants had prepared for recording the Sheriff's Deed to Real Property, recorded on August 7, 2019, Defendants knew, or should have known, that the Court had not entered an order of confirmation of the sale. . . . |
| | 8.5. Defendants allowed the Sheriff's Office to issue a Deed to the subject property without formal confirmation of the foreclosure sale. |
| | 8.6. The Sheriff's Deed is thus void as a matter of law since it was executed and recorded without Court confirmation of the foreclosure sale. |

Thus, prior courts "necessarily considered the same relevant evidence presented in this action." *Ames v. Wells Fargo Bank NA*, No. 3:20-CV-5246-BHS-DWC, 2020 WL 6434821, at *2 (W.D. Wash. June 9, 2020), *report and recommendation adopted*, No. C20-5246 BHS, 2020 WL 5105458 (W.D. Wash. Aug. 31, 2020) (plaintiff's challenge to the legality of the foreclosure and

1   sale of her property and the allegedly fraudulent activity of those involved were identical to a state

2   court action where the court held that she "waived her claims of wrongful foreclosure, conversion,

3   and civil conspiracy when she failed to enjoin the foreclosure sale."). And, as discussed above, the

4   superior court dismissed Mr. Chen's claims for violation of his civil rights, violation of the

5   Consumer Protection Act, outrage, slander of title, fraudulent misrepresentation, and fraudulent

6   transfer with prejudice in September 2022 because his allegations either failed to state a claim

7   upon which relief could be granted or were barred by res judicata. Dkt. No. 24-13 at 7–8.

8          For these reasons, the first two elements of issue preclusion are met. The third element is

9   likewise easily met: Mr. Chen was the plaintiff in the prior lawsuits.

10         The fourth element of collateral estoppel, the injustice element, is also satisfied. "[R]ooted

11   in procedural unfairness," this element is not met where "the parties to the earlier proceeding

12   received a full and fair hearing on the issue in question." *Schibel*, 399 P.3d at 1133–34 (cleaned

13   up). Here, Mr. Chen has had a full and fair hearing on whether there were any legal deficiencies

14   in the foreclosure, sale, or sheriff's deed. Because Mr. Chen bases all of his claims on these

15   precluded issues, *see generally* Dkt. No. 1, all three of his claims are barred. *See James v. DLJ*

16   *Mortg. Cap., Inc.*, No. 13-13936, 2015 WL 1119948, at *12 (E.D. Mich. Mar. 11, 2015)

17   ("Plaintiff's contention that defendants . . . knew and, yet, failed to disclose that the other party

18   defendants essentially lied their way into foreclosing on his property, presupposes that the

19   mortgage foreclosure process was invalid from the start," but "the state courts already decided this

20   issue when they affirmed the foreclosure sale and issued a judgment of eviction against him").

21         Chen's attempt to put a new gloss on old facts and failed arguments cannot succeed. *Little*

22   *v. Washington*, No. C13-1284RSL, 2013 WL 6159340, at *2 (W.D. Wash. Nov. 25, 2013) ("An

23   imaginative litigant may not avoid res judicata 'by attaching a different legal label to an issue that

24   has, or could have, been litigated.'" (quoting *Tahoe-Sierra Preservation Council, Inc. v. Tahoe*

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 15

1   *Reg'l Planning Auth.,* 322 F.3d 1064, 1077–78 (9th Cir. 2003))). Even if issue preclusion did not

2   bar Mr. Chen's claims, Defendants' quasi-judicial immunity and his failure to state a claim do.[7]

3           2.      <u>Mr. Chen Has Not Stated a Claim Against Defendants Under *Monell*</u>

4           Mr. Chen alleges that Defendants "deprived [him] of his right to be protected in his interest

5   in the subject property . . . without due process of law," thereby violating the Fourteenth

6   Amendment and rendering Defendants liable for damages under Section 1983. Dkt. No. 1 at 10–

7   14. Even assuming that Mr. Chen could successfully state a claim that he was deprived of a

8   "constitutionally protected life, liberty or property interest" under the Fourteenth Amendment,

9   *Hotop v. City of San Jose*, 982 F.3d 710, 718 (9th Cir. 2020) (cleaned up), he has not stated a claim

10  for municipal liability under *Monell*.

11          "[M]unicipalities may be liable under § 1983 for constitutional injuries" when the injury

12  occurs "pursuant to (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train,

13  supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton by Horton v. City*

14  *of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019) (citing *Monell v. Dep't of Soc. Servs.*, 436

15  U.S. 658, 690–95 (1978)). A suit against a government employee in his or her official capacity is

16  a suit against the government entity, which is "the real party in interest[.]" *Kentucky v. Graham*,

17  473 U.S. 159, 166 (1985); *Monell*, 436 U.S. at 690 n.55 ("[O]fficial-capacity suits generally

18  represent only another way of pleading an action against an entity of which an officer is an

19  agent[.]").

20

21  _____

22  [7] The Court further notes that under Section 4.96.020 of the Revised Code of Washington, a plaintiff may not sue "any
    local governmental entity, or . . . any local governmental entity's officers, employees, or volunteers, acting in such

23  capacity, for damages arising out of tortious conduct until sixty calendar days have elapsed after the claim has first
    been presented to the agent of the governing body thereof." Nowhere does Mr. Chen indicate that he satisfied this
    requirement. *See Richmond v. Spokane Cnty., Washington*, No. 2:21-CV-00129-SMJ, 2021 WL 4951574, at *1 (E.D.

24  Wash. Oct. 25, 2021) ("Plaintiff could not properly maintain a suit for his state law claims" without pleading
    compliance with Section 4.96.020).

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 16

To establish liability, a plaintiff must do more than identify conduct attributable to the municipality. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). He or she "must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal policy or custom and the deprivation of federal rights." *Id.; see also Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) ("[O]fficial policy must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." (quoting *Monell*, 436 U.S. at 694)). Moreover, "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691 (emphasis in original).

Mr. Chen has not alleged any of those theories or facts to support them. Therefore, he has failed to allege facts sufficient to state a plausible claim against the KCSO or Deputy Esparza in his official capacity under *Monell*. *See id.*

3. <u>Deputy Esparza Is Entitled to Quasi-Judicial Immunity</u>

Nor can Mr. Chen pursue his claims against Deputy Esparza in his individual capacity. Government employees "who faithfully execute valid court orders are absolutely immune from liability for damages in civil rights actions challenging conduct authorized by the order." *Coverdell v. Dep't of Soc. & Health Servs.*, 834 F.2d 758, 764 (9th Cir. 1987). This is because they "are themselves 'integral parts of the judicial process.'" *Id.* at 765 (quoting *Briscoe v. LaHue*, 460 U.S. 325, 335 (1983)). "The fearless and unhesitating execution of court orders is essential if the court's authority and ability to function are to remain uncompromised." *Id.*

That immunity has been extended to sheriffs who executed court orders in foreclosure proceedings. *See, e.g.*, *Stafne v. Zilly*, 820 F. App'x 594, 595–96 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 2515 (2021) ("Trenary, acting in his official capacity as a sheriff responsible for executing

a court-issued foreclosure order, enjoys absolute quasi-judicial immunity from Stafne's claims"

for injunctive relief to block Trenary from executing a court-issued foreclosure order and damages

that might follow from the execution of that order); *Henry v. Farmer City State Bank*, 808 F.2d

1228, 1238–39 (7th Cir. 1986) (holding that a sheriff who acted pursuant to an official court order

enjoyed quasi-judicial absolute immunity from liability for damages under Section 1983); );

*Rickard v. Riverside Cnty. Sheriff's Dep't*, No. 5:20-cv-00539-AB-JC, 2020 WL 5027985, at *6

(C.D. Cal. Apr. 7, 2020). "[E]xtension of absolute immunity" to sheriff's deputies does not just

"protect the enforcement function performed by the deputies"; it also "protect[s] the judicial

decision-making function by discouraging collateral attacks and encouraging appeals." *Richman*

*v. Sheahan*, 270 F.3d 430, 437 (7th Cir. 2001).

In *Henry*, the plaintiffs claimed that the sheriff wrongfully entered their home, seized their

property, and sold it at public auction pursuant to a court order directing the sheriff to enforce the

court's judgment. *Henry*, 808 F.2d at 1238. The court held that the sheriff was entitled to immunity

because he "was at all times acting pursuant to an official court order to enforce a validly entered

judgment when he performed the allegedly wrongful acts of which the Henrys now complain." *Id.*

at 1238–39 ("It is difficult to think of a task more intimately related to a judicial proceeding than

that of enforcing a money judgment entered by a court."). The court cautioned that allowing

plaintiffs to attack court orders collaterally by bringing a Section 1983 suit against sheriffs for

damages would effectively require sheriffs "who enforce properly entered judgments pursuant to

facially valid court orders to act as appellate courts, reviewing the validity of both the enforcement

orders and the underlying judgments before proceeding to collect on them." *Id.* at 1239.

Similarly, in *Duenas v. Freitas*, No. C13-0836-SBA, 2013 WL 3298249 (N.D. Cal. June

28, 2013), a former property owner sued a sheriff and his employee, alleging that they violated his

constitutional rights by serving an eviction notice pursuant to a writ of possession issued by the

Sonoma County Superior Court. The plaintiff asserted that "service of the eviction notice was improper ostensibly because the foreclosure of the property and resulting unlawful detainer judgment were improper." *Id.* at *5. The court concluded that "[b]ecause the sole allegations against the Sheriff Defendants relate to [their] mandatory duty to enforce the Superior Court's Writ of Possession," they were entitled to quasi-judicial immunity. *Id.*

Like the defendants in *Henry* and *Duenas*, Deputy Esparza was acting pursuant to a valid court order and in accordance with his official duties in executing the order of sale and signing the sheriff's deed. Dkt. No. 23 at 3, 5. Indeed, Mr. Chen alleges no facts showing that Deputy Esparza was acting outside the scope of his authority. Deputy Esparza is therefore entitled to immunity for his role in effectuating the Court's order regarding Chen's claims against him in his personal capacity. Mr. Chen was free to—and did—"attack the court's order directly or on appeal," *Coverdell*, 834 F.2d at 765; *see Henry*, 808 F.2d at 1239, and he cannot now circumvent the superior court's prior orders or its immunity by bringing his claims against Deputy Esparza for enforcing those orders.

4.   Mr. Chen Has Not Stated an Outrage Claim

Neither party has addressed Mr. Chen's outrage claim, but the Court does so because Defendants moved for summary judgment on all claims. Dkt. No. 22 at 2. Even assuming without deciding that Defendants are not entitled to any form of immunity against Mr. Chen's outrage claim, the claim still fails because Mr. Chen has failed to establish any of its elements. The elements for the tort of outrage in Washington are "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to the plaintiff of severe emotional distress." *Dicomes v. State*, 782 P.2d 1002, 1012 (Wash. 1989) (quoting *Rice v. Janovich*, 742 P.2d 1230, 1238 (Wash. 1989)). The challenged conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be

1  regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Grimsby v.*

2  *Samson*, 530 P.2d 291, 295 (Wash. 1975) (emphasis omitted)). "The question of whether certain

3  conduct is sufficiently outrageous is ordinarily for the jury, but it is initially for the court to

4  determine if reasonable minds could differ on whether the conduct was sufficiently extreme to

5  result in liability." *Id.*

6       Mr. Chen has not alleged conduct that rises to the level of outrage. Reasonable jurors could

7  not conclude that executing the court's order and issuing the sheriff's deed amounted to extreme

8  or outrageous conduct. *See, e.g.*, *Case v. Kitsap Cnty. Sheriff's Dep't*, 249 F.3d 921, 932 (9th Cir.

9  2001) (affirming dismissal of outrage claim that was based on sheriff's deputies executing an arrest

10  warrant in the subject's residence). Therefore, Defendants are entitled to summary judgment on

11  Mr. Chen's outrage claim.

12  **D.   Mr. Chen's Untimely Cross-Motion for Summary Judgment Is Denied**

13       Mr. Chen belatedly filed a cross-motion seeking summary judgment on all his claims. Dkt.

14  No. 30 at 1. He filed it on December 21, 2022, six weeks after the November 7, 2022 dispositive

15  motions deadline set by the Court in its scheduling order. Dkt. No. 13 at 2. Mr. Chen has not moved

16  to extend that deadline or provided any explanation for his failure to comply with it.

17       As set forth in the Local Civil Rules, "parties are bound by the dates specified in the

18  scheduling order." LCR 16(b)(6). All litigants, including those proceeding pro se, are "expected

19  to abide by the rules of the court in which [they] litigate[]." *Carter v. Comm'r of Internal Revenue*,

20  784 F.2d 1006, 1008 (9th Cir. 1986); *see also Muñoz v. United States*, 28 F.4th 973, 978 (9th Cir.

21  2022) ("[I]t is axiomatic that pro se litigants, whatever their ability level, are subject to the same

22  procedural requirements as other litigants."). The Court previously warned Mr. Chen that it "would

23  not tolerate further violations of applicable rules." Dkt. No. 26 (noting that Mr. Chen violated

24  Local Civil Rule 7(j) by moving to extend the due date for his response to Defendants' motion for

summary judgment after the response deadline had already passed).[8]

Despite that warning and his obligations as a litigant, Mr. Chen has violated the Court's scheduling order and Local Rule 16, and his untimely motion is denied on that basis. *See, e.g., Becker v. Carney*, No. 16-cv-05315-RSM-JRC, 2020 WL 5513802, at *1 (W.D. Wash. Sept. 14, 2020) (denying cross-motion for summary judgment as untimely); *see also Bowden v. Gregoire*, No. C08-5516-FDB-KLS, 2010 WL 11531002, at *4 (W.D. Wash. Jan. 28, 2010) (recommending denying plaintiff's untimely cross-motion for summary judgment), *report and recommendation adopted*, 2010 WL 11531125 (W.D. Wash. Mar. 8, 2010). In addition, his motion reiterates the same unpersuasive arguments he made in his response to Defendants' motion and fails to show that he is entitled to summary judgment. Accordingly, the Court denies Chen's untimely motion for summary judgment.

## III.   CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment, Dkt. No. 22, and DENIES Chen's cross-motion for summary judgment, Dkt. No. 30.

Dated this 27th day of December, 2022.

Lauren King
United States District Judge

---

[8] Although his motion for an extension was untimely, the Court granted Mr. Chen a short extension to file his response to Defendants' motion for summary judgment. Dkt. No. 26.